```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                        :
UNITED STATES OF AMERICA                            23 Cr. 286 (NSR)
                                        :
    - v. -
                                        :

Lin Feng.
                                        :
---------------------------------------X
```

## SENTENCING MEMORANDUM

Dated:   White Plains, New York
         September 12, 2024

```
                                    Federal Defenders of New York
                                    Benjamin Gold
                                    Attorney for Mr. Lin Feng
                                    81 Main Street
                                    White Plains, NY  10601
                                    (914) 458-8128
```

To:  Damian Williams
     United States Attorney
     Southern District of New York
     One St. Andrews's Place
     New York, New York
     Attn:  AUSA Michael Lockard

**Federal Defenders**
OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, NY 10601
Tel: (914) 428-7124 Fax: (914) 948-5109

Tamara L. Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

September 12, 2024

The Honorable Nelson S. Román
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, NY  10601

      Re:   **United States v. Lin Feng**
              **23-Cr-286 (NSR)**

Dear Honorable Román:

      Lin Feng, in an attempt to earn money during a time of financial need, agreed to be an assistant to John Chen, a friend he knew from his community. Shortly thereafter, Mr. Feng – knowing that he was helping Mr. Chen promote the goals of the Chinese of the Government – delivered a bribe to a fictitious IRS agent. While his conduct was unlawful, Mr. Feng's role was minor. Moreover, he has spent nearly sixteen months MDC, where he has endured horrible conditions and witnessed countless fights. Under these circumstances, a sentence of time-served is more than sufficient.

Mr. Feng's Childhood

      Mr. Feng was born in 1979 in Shanghai, China. PSR ¶ 75. He grew up as an only child and was raised by his father, Gui Qing Lin, and his mother, Chuan Zhen Huang. *Id.* ¶ 76. Mr. Feng's father owned a construction company and was able to provide for the family. *Id.* At the age of five, Mr. Feng was sent to live at an Olympic training facility. *Id.* According to his former coach, Mr. Feng "was a rare sports talent with excellent moral character." Zhihui Huan Letter (Exhibit A).[1] As athlete in training, Mr. Feng no longer had regular contact with his parents and instead spent the rest of his childhood attending school and participating in the training facility's intensive sports-training program. *Id.* By the time he was eighteen, Mr. Feng was a professional athlete who excelled in track and at cycling. *Id.* But living at a training facility had its drawbacks. As explained by Yuki Li, Mr. Feng's friend, "He couldn't go home and just train [sic] his way up for his entire

---

[1] The Letters of Support that are attached to this sentencing memorandum were received in Mandarin and have been professionally translated by Lily Lau, an approved court interpreter. Both English and Mandarin versions of the letters are attached to this submission.

*United States v. Lin Feng*  September 12, 2024
Sentencing Submission  Page 2

youth." Yuki Li Letter (Exhibit B).  Ms. Li adds that when Mr. Feng's mother was ill his athletic obligations – an international tournament – were considered so important that Mr. Feng was not allowed to return home to say goodbye to his mom. *Id.*

Adult Years

At eighteen, Mr. Feng joined China's national cycling team and in 2008, Mr. Feng represented China in the Olympics.  *Id.* 78.  While he enjoyed the fame of being a professional athlete and won several races, Mr. Feng's life as an athlete was very difficult, and Mr. Feng eventually suffered a serious knee injury which ended his athletic career.  *Id.*  Initially, Mr. Feng remained in China but in 2014 he relocated to the United States and, shortly thereafter, Mr. Feng married Nisha Yang.  *Id.* ¶ 75, 79.

Mr. Feng lived mostly in California, although he spent roughly six-months in Atlanta on a work assignment in 2022. *Id.* ¶ 80.  While in the United States, Mr. Feng worked a variety of jobs.  He worked security, worked in restaurants, drove an uber, and worked for a tech company.  *Id.* ¶ 81, 90, 92, 93.  Jung Liu Letter (Exhibit C); Yuki Li Letter (Exhibit B).  While he was busy, he struggled financially.  He was trying to start a family and spent a considerable amount of money on fertility treatment.  Yuki Li Letter (Exhibit B).  Corrupt employers took advantage of Mr. Feng, which resulted in him losing considerable money.  *See* Yuki Li Letter (Exhibit B) ("He doesn't know how to handle money well . . .  he would be swindled by others. . . two persons. . . swindled him and he ended up not getting paid for a job that he worked for over a year, it was some blockchain computer company.  The recent one was a so-called friend got him into a security company, told him [he] would give him shares, but ended up in debt and also did not pay him for his work for almost two years.").

Despite his financial difficulties, Mr. Feng did a lot to help his community and his friends.  A family member who came to the United States in 2022 recalls how Mr. Feng helped her move, "contributed a lot to our new home" and helped her get situated in the United States.  Huining Liang Letter (Exhibit D).  Wei Fang, who met Mr. Feng at a church in California, explains that Mr. Feng "organized several charity activities," including a cycling program for children.  Wei Fang Letter (Exhibit E).  And during the COVID-19 pandemic, Mr. Feng helped make sure that masks were available to those in need.  *See* Yuki Li Letter (Exhibit B).  Indeed, Mr. Feng is so charitable and trustworthy that a friend explains "Lin Feng is the only person that has my office key and house key, because he is the only person that me and my husband trust." *Id.*

*United States v. Lin Feng*  September 12, 2024
Sentencing Submission  Page 3

The Offense and Guidelines

While Mr. Feng was living in California, he met John Chen, a man with ties to the Chinese Government. *Id.* ¶ 13-14. During a time period when Mr. Feng was unemployed, Mr. Chen offered Mr. Feng employment as Mr. Chen's assistant. *Id.* ¶ 51-52. 91. Mr. Feng would drive Mr. Chen and would run errands for him.

In early 2023, Mr. Chen decided to help achieve the Chinese Government's goal of hurting the Falun Gong. *Id.* ¶ 13-15, 23.[2] Acting under the direction of at least one individual within the Chinese Government, Mr. Chen agreed to work to try to revoke the tax-exempt status of an entity – the Shen Yun Performing Arts Center – of the Falun Gong. *Id.* ¶ 15, 40-42. In order to accomplish this, Mr. Chen spoke with an individual (Individual # 1) who told Mr. Chen that he could connect Mr. Chen with someone (Agent #1) at the IRS who could help with Mr. Chen's plan to hurt the Falun Gong. *Id.* ¶ 23. Mr. Chen acquired or created a whistleblower complaint that was critical of the Falun Gong and he mailed it to the IRS. *Id.* ¶ 25. The complaint, which the IRS received on February 6, 2023, alleged that the Shen Yun Performing Arts Center was not a tax-exempt organization and that the group should face legal scrutiny and financial repercussions, mostly related to taxes. *Id.* ¶ 23.

On February 10, 2023, Mr. Chen travelled to China and, while in China, Mr. Chen connected Individual # 1 with a Chinese Government Official, and the group discussed ways to connect Agent #1 with Mr. Chen. *Id.* 29-30. Mr. Chen subsequently e-mailed Agent #1 and setup a meeting. *Id.* Then on May 8, 2023, Mr. Chen flew back to the United States, this time with over $10,000 in cash. *Id.* ¶ 32. Mr. Feng picked Mr. Chen up at the airport and Mr. Chen called Agent #1 to confirm their upcoming meeting. *Id.* ¶ 33. During this call, Mr. Chen informed Agent #1 that he'd be bringing his "driver," Mr. Feng. *Id.* During a subsequent phone call, Agent #1 told Mr. Chen that the complaint was weak and Mr. Chen said they'd discuss improving the complaint at their upcoming meeting. *Id.* ¶ 34.

On May 14, 2023, Mr. Feng drove Mr. Chen to meet Agent 1. *Id.* ¶ 37. The purpose of this meeting was prepare for a more formal meeting, to be held at the IRS office in New Windsor, that was scheduled for the next day (May 15, 2024). *Id.* ¶ 30, 38. The May 14th meeting took place at a restaurant and, during this meeting, Mr. Chen agreed to pay Agent #1 money, specifically $50,000, if the agent successfully opened an audit into the Shen Yun Performing Arts Center. *Id.* ¶ 36. Mr. Chen also agreed to give the agent 60% of any whistleblower award that he received. *Id.* Mr. Chen then gave the agent $1,000 and, at Mr. Chen's request, Mr.

---

[2] As detailed in the Complaint and in the PSR, the Falun Gong is a is a spiritual practice that has been banned in China and which the Chinese Government believes is a threat to its rule. Complaint ¶ 14, PSR ¶ 16-18.

Feng agreed to fly back to New York to pay the agent an additional $4,000. *Id.* ¶ 37.

The following day, Mr. Chen met with Agent #1 at the IRS office and attempted to advance the complaint he had filed. *Id.* ¶ 39. Mr. Feng drove Mr. Chen to this meeting. *Id.* ¶ 38. Then on May 18, 2023, Mr. Feng – who had returned to California – flew back to New York and gave Agent #1 an additional $4,000. *Id.* ¶ 44. While he was not involved in the bulk of Mr. Chen's attempt to get the IRS to damage the Falun Gang, Mr. Feng knew that the whistleblower complaint had been filed on behalf of an individual within the Chinese Government and that the $4,000 bribe that he delivered was designed to advance Mr. Chen's mission to hurt the Falun Gong.

Arrest, Acceptance of Responsibility, Plea and Guidelines

Mr. Feng was arrested on May 26, 2023. *Id.* P. 2. Mr. Feng was initially granted bail, but the Government appealed before Mr. Feng was released. The Government prevailed and Mr. Feng has since been detained, mostly at MDC in Brooklyn. See *23 MJ 04263*.[3] While at MDC, Mr. Feng has had no disciplinary issues. PSR ¶ 9.

The Government provided Mr. Feng with a plea agreement on May 26, 2024. Mr. Feng pleaded guilty two-months later. *PSR* ¶ 7. As stipulated in the plea agreement and as calculated by Probation, Mr. Feng faces a Guidelines range of 12 to 18 months. *Id.* ¶ P. 26. The defense does not object to this calculation.

Mr. Feng is remorseful for his conduct. He expressed remorse at his plea and has shared similar sentiments to his family. His father explains, "he knows where he went wrong, knows that he had been taken advantage of, and knows that code of loyalty can do a lot of harm to people. He also said that he must learn from his lessons." Gui Qing Lin Letter (Exhibit F).

## The Most Appropriate Sentence:  Time Served (16 months)

As Your Honor is well aware, in selecting a sentence the Court must take as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence,

---

[3] The bail appeal was heard by the Honorable Kenneth Karas on June 2, 2023. Mr. Feng subsequently moved for bail in front of Your Honor, but that application was also denied.

incapacitation, and rehabilitation." *Id*. In *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), the Second Circuit explained that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, **it must choose the lower sentence**. *See id*. at 142 (observing that where a guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence). In this case, Mr. Feng's conduct was non-violent and minimal, and he reaped no financial benefit. This, combined with his sympathetic past and his commitment to help others, demonstrates that additional incarceration is unnecessary.

A. **The nature and circumstances of Mr. Feng's conduct do not necessitate additional incarceration.**

During a time of financial difficulty, Mr. Feng accepted employment to be Mr. Chen's assistant. Not long thereafter, Mr. Feng found himself helping Mr. Chen bribe a fictitious IRS worker who had agreed to help promote the interests of the Chinese Government. While Mr. Feng's activities were clearly unlawful, his role in the scheme – delivering $4,000.00 and transporting Mr. Chen to meetings – was relatively minor. Additionally, Mr. Feng did not benefit financially, and he was not the individual who masterminded or orchestrated the scheme. Under these circumstances, additional imprisonment is unnecessary.

B. **Ms. Feng's history and characteristics, and his remorse, justify leniency.**

Mr. Feng's childhood was not easy. As a young boy, he was separated from his parents and began training to become a professional athlete. He spent his childhood, and early adulthood, as an athlete representing China. Then he was injured and eventually moved to California to seek financial opportunity. Mr. Feng worked hard in the United States, but he struggled financially. Nevertheless, he volunteered in his community. He organized cycling events for children, helped make sure his fellow church members had masks during COVID-19 and donated computers to his church. *See* Yuki Li Letter (Exhibit B). During this same time period, Mr. Feng was also a devoted son who strived to help his father. *See* Yuki Li Letter (Exhibit B), Gui Qing Lin Letter (Exhibit F). Moreover, Mr. Feng is remorseful and has never before been convicted of a crime. For these reasons, further incarceration is unnecessary.

C. **The remaining sentencing factors justify leniency.**

Mr. Feng has been specifically deterred. After his arrest, he was detained, and this represents his first time Mr. Feng has been incarcerated. This is noteworthy, and justifies a sentence of time-served, because prison has a greater ability to deter conduct for those who have served little or no prison time in the past. *See United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001) (recognizing in

the context of the career offender guideline that the amount of prior prison time is relevant to determining the deterrent effect of the sentence to be imposed); *see also, e.g., United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (affirming below-Guidelines sentence on government's appeal, and approving of "the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned") (citing § 3553(a)(2)(A)–(B)); *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

Regarding general deterrence, "social science conclusively finds that certainty matters more than severity." Brian Jacobs, *The Cost of Affording Deterrence*, Forbes (Nov. 16, 2021).[4] "[T]he vast majority of people who are committing crime are not particularly forward-looking. So adding five or ten years to an already long prison sentence simply doesn't have much of an effect on their behavior today." *Id.* In a bulletin by the National Institute of Justice, the U.S. Department of Justice echoes, "Research shows clearly that the chance of being caught is a vastly more effective deterrent than even draconian punishment." U.S. Department of Justice, Five Things About Deterrence 1, National Institute of Justice (May 2016).[5] "Laws and policies designed to deter crime by focusing mainly on increasing the severity of punishment are ineffective partly because criminals know little about the sanctions for specific crimes." *Id.*

Finally, a sentence of time-served is appropriate because additional incarceration would create an unwarranted sentencing disparity. As detailed by Probation, similarly situated individuals received an average sentence of five-months, so a sentence greater than time-served would create an unwarranted sentencing disparity.

## CONCLUSION

There is nothing to be gained by a draconian sentence in this case, especially in light of Mr. Feng's charitable past and his devotion to his family. I ask the Court to sentence Mr. Feng to time served.

---

[4] Available at https://www.forbes.com/sites/insider/2021/11/16/the-cost-of-affording-deterrence/?sh=5d6e77837bd4 (last accessed on September 12, 2024).

[5] Available at https://www.ojp.gov/pdffiles1/nij/247350.pdf (last accessed on September 12, 2024).

*United States v. Lin Feng* September 12, 2024
Sentencing Submission Page 7

Thank you for your consideration.

Sincerely,

//s

Benjamin Gold
Assistant Federal Defender

cc: AUSA Michael D. Lockard